Employees, AFL-CIO. Ms. Jengjins for the Avalanche, Ms. Alvis for the Avalanche. Good morning. My name is Eleanor Jenkins, and I represent Bastani et al. Because of my limited time, I'm going to get straight to it. Our first objection on the trial of the trial court's decision was that they summarily dismissed two of the plaintiffs, Lauderdale and McCarran. And they relied on the case Himmler of the Southern District of New York. They didn't have to rely on it, but the trial judge relied on that case. That case is an opposite to what was done here. It was not a full and fair fettering out of whether there were material facts before he granted summary judgment and dismissed two of the complaints. Wouldn't you agree that the motion to dismiss standard and the summary judgment standard are different? I mean, motion to dismiss, we'd be looking at the. I really couldn't hear that. Sure. Wouldn't you agree that the motion to dismiss standard is different from the summary judgment standard? In other words, on the motion to dismiss, we're looking at complaint insufficiency of allegations. But by the time you get the summary judgment, you would have gone through interrogatories, responses, depositions, et cetera. And that's the evidence at that. That is true. We had gone through the interrogatories. We had gone through pretrial hearing at which the trial judge did not allow Miss Lauderdale to testify. He said, we're going to take testimony only from Mr. McCarran and it's going to be very limited. We're not going to take testimony from her. So there was no bettering out of a lot of the issues before he got. But what I'm trying to get you to do is focus on the point in time of the record. In other words, motion to dismiss again, relying on the complaint and then summary judgment. What is the evidence that has been developed up to that point that the judge gets to assess and determine if there's any genuine issues of fact versus what's then at trial, which is actually testified to and things of that nature. Right. What have been developed at that point? Interrogatories had been taken. There was not a whole lot that had been developed at that point in time. And then that's my point, too, because then Mr. Sonny is thinking into the future about what would be developed for trial versus what the judge's limited record is at that point in time. Yes. Yes, that's true. That's true. But I was always figuring we're developing this as we go. And that that may have been an error on their part to think that this is going to develop as we go. But then the the the trial judge then held back because they knew there was going to be a free trial hearing. And then he did not let one of the plaintiffs even testify. They said, I'm taking very limited testimony and he limited that as well. And I move on because I really want to get to the real central point is that this case was tried. David Cox took the action against the union president, vice president and treasurer. David Cox was the president of A.G.E. National. He took the action. He put in place a trustee, Nate Nelson, to carry out the trusteeship. Neither of these individuals, though they were listed early on on on A.G.E.'s witness list, neither of them came to testify. Now, what you have from A.G.E. now is that we didn't object that the study itself did not object. However, we went back in the record and it's quoted in our reply brief. We put the whole objection in the record that I mean, in the brief. That are the attorney, Mr. Keating, went on at length as to what he would have done to get Mr. Cox here in order to. Miss Jenkins, even if you preserved it below the trial court, even if you preserve the issue in the trial court, how did you can you point to where you preserve that issue? Yes, exactly. In your opening brief to the court. Can this to twenty to twenty nine? No, but in your in your opening brief to this court. This court. Yes. OK, let me. Well, the. The only place that I see it, excuse me, the only place that I see it is in the state. Statement of issues on page two. What are you looking at? I'm just wondering if it if there's I don't see this point developed further in the in the actual brief. In the reply brief, I think that what I considered was that it was not clear enough that we had made the objection below. And so what we did in reply brief was quoted instead of just referring to it. We gave the entire quote on page six. We quoted the language from the transcript of what Mr. Keating had to say about it because. We did say that and I can't find it exactly right now, but I will refer to it later if you need. We did. Object. And I think wasn't the government's point that you are focusing in even in your reply brief. And of course, the government didn't have a chance to respond to this yet that what happened at one point. But then the matter proceeded before the trial court. And at the end of that further proceeding, defense counsel presented no objection. Would you agree with that? Defense counsel. I don't know what they did at that point. What happened is after the judge ruled and that's around a two thirty two to thirty three. I'm not I'm focusing on what happened after that. The court after after the objection was made and the trial judge ruled that he would allow. He would allow the case to proceed without Mr. Cox and without Mr. Nelson. And counsel for Boston, he said, I have to do what the trial judge has said to do to go ahead with this process of allowing actors to read the deposition into the record. He said, I have to go along with it. What could he do with that? But do what the judge had ordered that this information was coming in. It was coming in without Mr. Cox, without Mr. Nelson. And there was nothing else that the plaintiffs could do at that point. But to to lay the objection there, to bring it to you to this court. But there was nothing that they could do in the district court. So why do you have an idea why they're the claims of of Astani and the others was not framed as a freedom of association? I don't know. And that's one of the things I wanted to say about Himmler that the judge relied on him. But one of the concepts in Himmler is that it can be this distant group that your action that you're seeing that way in union political alleys. And that's how you are perceived. And that's how the case was presented. That that whatever Astani was doing, whatever President Cox felt about Astani, he felt about the people who had won on Astani's ticket and the people who were in process with Astani. And that was Lauderdale and McCarran, that they were a triumvirate. Any further questions? Ms. Rogers? No, thank you. We'll give you we'll give you a couple minutes on rebuttal. OK. Good morning. Good morning. May it please the court, Denise Duarte Alves on behalf of the American Federation of Government Employees. The court should affirm the district court's decision to dismiss plaintiff appellant Lauderdale and plaintiff apparent McCarran's claims and affirm the jury's verdict in favor of AFTE for three reasons. First, the district court did not abuse its discretion in finding Mr. Cox unavailable and allowing excerpts from his deposition and testimony from the evidentiary hearing to be read to the jury. Moreover, plaintiff appellant failed to properly preserve this issue when they did not object the lower courts ruling, nor have they raised the issue in their opening brief before this court. Second, I think the reply brief shows there was an objection, at least there's a way to read the attorney's comment that he was preserving the objection. And then they proceeded to this next phase, the alternative way of presenting the evidence. So to that extent, it could be read most favorably to the defendant that there was an objection. But that doesn't respond to your point about there was no abuse of discretion. Your Honor, if I may, I would explain in response to your statement that the objection that was made by plaintiff appellant's counsel was, and if you see the colloquy that takes place between the judge and plaintiff appellant's counsel. There is this colloquy that is addressing Mr. Keating's concerns regarding Rule 804 of the Federal Rules of Evidence, but specifically with regards to A5. And there you see where Mr. Keating is expressing concern that under the Federal Rules of Evidence, the proponent of testimony would be responsible for procuring the witness. And Mr. Keating expressed concern that AHE had not attempted to, in fact, subpoena Mr. Cox. But the important point here is that even though Mr. Keating, in fact, expressed that issue and that concern to the court, the court did not rely on that and express to Mr. Keating that he opposed that argument and that that argument, in fact, was not the reason for his decision. I'm not really taking issue with the way you want to read the record. All I'm suggesting is that there could be a way to read the record that is more favorable here to the defendants, but I don't think that responds to the argument that there was no abuse of discretion here. Given the nature of abuse of discretion where alternative reasonable options are not an abuse of discretion as opposed to an error of law. That was the only point I was making. So it's not unusual to read records where counsel says, I'm not surrendering my objection. But, you know, moving along. You know, what can I do? The trial court has ruled he wants the evidence to come in. And so I take your point about no objection to A4, only to A5. But I think an important point here is, yes, no objection to A4 and objection to A5. But at the moment that the court then issued his ruling saying that Mr. Cox was unavailable, according to rule 804, A4, under the federal rules of evidence, Mr. Keating could then object on that basis. We're agreeing. I'm so sorry, I did not hear you. I'm not disputing your point. I'm just offering an alternative view, but I don't think it's worth pursuing here. Understood. Thank you for clarifying. Can I just ask you an actual question? Who was Mr. Stennis? Who was he? Mr. Stennis, who read Mr. Cox's testimony, who was he? Mr. Stennis is an employee of AFGE. He's an attorney at the Office of the General Counsel at AFGE. So aside from not objecting with regards to in order to preserve the issue, the plaintiff appellants also did not object to the lower court's ruling. They have not raised this issue in their opening brief here before the court. The second point I wanted to make as to why the decision should be affirmed is that the district court properly dismissed plaintiff appellants Lauderdale's claims because there's no specific evidence in the record showing that she engaged in protective speech. And it properly dismissed McCarran's claim because there was no evidence in the record showing that Mr. Cox or Mr. Bunn knew that McCarran had engaged in protective speech. And three, the court should reject appellant plaintiffs' arguments which were not raised with the district court or which are not supported by the record. And even if they were, it does not provide the court with the basis to overturn the district court's decision. I would like the opportunity to address a few points that Ms. Jenkins raised. I would note that Ms. Jenkins is also is one of the same with Ms. Lauderdale, who is plaintiff in this case, one of the plaintiffs. There is when you are looking at. The moment that you find that. A witness. Is unavailable. Pursuant to 804. The testimony that was brought in and read by Mr. Stennis, the the deposition, the excerpts from the deposition that were also read by Mr. Stennis. Those were excerpts of the deposition and of the evidentiary hearing where plaintiff appellants, their counsel had an opportunity to cross examine, to ask questions. Of, in fact, Mr. Cox. So there is so to the extent that there is an argument that plaintiff appellants are making an argument that there was harm in Mr. Cox. His testimony and the experts excerpts of the deposition being allowed into the record and him not being deemed unavailable. It is AMGE's position that there was no harm. We'd also like to. I would also like to address that, aside from the court not abusing its discretion in finding Mr. Cox unavailable. I would like to bring to your attention that in plaintiff appellants opening their opening brief. They did not. In fact, raise the argument properly before this court with regards to preserving their argument as to 804A4. If you look at the opening brief specifically with regards, I would direct the court's attention to page 13. You will see that there is no mention of no argument addressing 804A4. In fact, they don't address 804 at all. In the opening brief, they now modify their argument, change their argument to, in fact, not object or not address whether or not the court erred in admitting or allowing the transcript of the deposition to be read to the jury. And instead, now they're arguing that the court, in fact, erred in allowing Mr. Cox to hide behind the 100-mile limit of enforcement subpoenas. In fact, then it appears to argue a violation of federal civil procedure 45C1A. I would finally bring to the court's attention that ultimately plaintiff appellants have not shown that they were harmed in this case. First, as I already argued, plaintiff appellants had the opportunity to close Mr. Cox, had the opportunity to cross-examine. We did have an evidentiary hearing where he was questioned. The court provided instructions to the jury with regards to how to treat the testimony that was being introduced and read to them. Moreover, plaintiff appellants' counsel was given the opportunity to, in fact, argue to the jury in its closing arguments as to the ability to consider Mr. Cox's unavailability and to, in fact, question the credibility of what was heard by the jury. In conclusion, we would ask that this court affirm the district court's decision to dismissing Lauderdale and McCarran's claims and affirm the jury's verdict in favor of AFTP. Thank you. Ms. Jenkins will give you two more minutes. I think I heard that AFGE saying that the objection was not preserved. I think that's what I heard. And Mr. Keating, and we laid it out in the reply brief, but Mr. Keating also added, and we couldn't put everything in the reply brief, he noted, and this is at Appendix 231, that the fact that Cox was not here and that Nate Nelson was not here, that it deprives Mr. Bastani of the right to have the jury review all of the key witnesses in person. This is not what the rules intended. Ms. Jenkins, I think you would do best to focus on whether you've preserved this argument in your opening brief rather than as an objection below in the trial. Can you point to where it's been preserved in the opening brief? In the opening brief? Before this court. You know, we, okay, that may have been, I don't see it written in the opening brief, but that's why you have a reply brief. We did not know that they were going to say that it had not been preserved, so there was no need to sit and do a recitation of we reserved this, we reserved this, not until we got our police brief. Did we know that that was in contention? It was very clear as much time as was spent on this, we didn't know that they would make that a base argument because it shouldn't be, because it was clearly preserved. It clearly was, so no, we didn't expound on that in the opening brief. We didn't feel it was necessary, but when we got their brief, we said, well, that's a major contention and we've got to address it. That's why I think the system is set up, the rules are set up so that you can have a reply brief and you can get to those elements that you didn't in the first one because you did not know that they were in contention. Any further questions? Let me just add that. Yes, they spoke about the deposition testimony coming in, but I think it's crucial that people, I'm sure your judges, you understand that that does not give the jury an opportunity to judge the witnesses. What they had, instead of Nate Nelson, they had acting for him, what's her name, Keisha Williams, who was a trained attorney. They had an attorney giving testimony for a man who knows absolutely nothing about the law, who is not as well spoken as her, who is not as bright as her, whose demeanor is totally different than hers. How can the jury judge the demeanor of that witness, the truthfulness of that witness, anything about that witness? Thank you, Ms. Jenkins. You're out of time. Thank you. Yes, the case is submitted.
judges: Rao, Childs, Rogers